Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Richard R. Barker
Alison L. Gregoire
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | 2:20-CR-153-RMP-1 |
|---|---|
| Plaintiff, | UNITED STATES' MOTION IN LIMINE TO LIMIT REFERENCE TO VICTIM'S ALLEGED PRIOR ACTS OF VIOLENCE |
| v. | |
| MADDESYN DANIELLE GEORGE, | |
| Defendant. | Pretrial Conference Scheduled on July 27, 2021, at 9:30 a.m. |

Plaintiff, the United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, Richard R. Barker, and Alison L. Gregoire, Assistant United States Attorneys, respectfully submits this motion in limine requesting that the Court issue an order limiting examination at trial on the issues of the alleged prior acts of the victim and third parties.

## BACKGROUND

a. <u>Allegations</u>

Defendant is charged by way of a Superseding Indictment with seven counts: (1) Robbery Affecting Commerce, in violation of 18 U.S.C. § 1951; (2) Possession of a Stolen Firearm, in violation of 18 U.S.C. § 922(j); (3) Possession with Intent to Distribute 5 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841; (4) Second Degree Murder in Indian Country, in violation of 18 U.S.C.

UNITED STATES' MOTION IN LIMINE - 1

§§1111(a), 1153; (5) Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1153; (6) Discharging and Using a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c); and, (7) Murder resulting from Discharging and Using a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. 924(j)(1).  ECF No. 32.

  b. Instant Offenses

At trial, the United States anticipates that the evidence will establish the following proffered facts.  Defendant robbed the decedent Kristopher Paul Graber of approximately $6,100 in cash, about 47 grams of methamphetamine, and a semi-automatic pistol on July 11, 2020.  The next day, July 12, 2020, when Mr. Graber attempted to reclaim his property, Defendant shot Mr. Graber in the chest, killing him almost instantly, from inside a Mercedes sedan.  The fatal gunshot went through the passenger side window, breaking the glass.  At the time of his shooting death, Mr. Graber was unarmed.

In a custodial interview shortly after the shooting, Defendant waived her *Miranda* rights and agreed to speak with police.  In the interview, Defendant initially denied knowing anything about how Mr. Graber was shot.  After a break, she indicated she had been to stay with Kris Graber.  He rubbed his nosed against her leg while standing behind her and grabbed her buttocks.  He then put his nose by her buttocks, and when she tried to sit up, he pulled her down and laid on top of her while she was on her side.  According to Defendant, she said, "Just get the fuck off of me." Defendant alleged that Mr. Graber pulled out a gun and said, "This will make you stay [laughing noise]." Defendant believed Mr. Graber was, "Like joking about it." Defendant responded, "Yeah, right, you wouldn't." She explained, "You know, I was like he was just joking, you know."

According to Defendant, Mr. Graber had a vibrator and was saying, "Here, just try it, just try it." She explained to the tribal detective, "You know, And I'm trying to be cool with the situation, and I'm like, "No, and I can't even feel shit anyways. I just

UNITED STATES' MOTION IN LIMINE - 2

had a C-section, you know." She told Mr. Graber, "I can't feel anything down there, anyways." Mr. Graber responded, "Come on, just try it." She again responded, "No," but, according to her, Mr. Graber, "[D]oes it anyways." He first put the vibrator on her crotch, over her clothing.  When she responded, "See, I told you I didn't feel shit anyways, you know," Mr. Graber began unbuttoning her pants and putting the vibrator "down there." Defendant then told him to stop and that it hurt, and he responded that she liked it.  In her interview, Defendant claimed this went on for about 45 minutes until she convinced Mr. Graber that she was hungry, at which point Mr. Graber got up and cooked breakfast. After they ate, a "couple people showed up," but then left. A maid came for about an hour, but then she too left.  Defendant was doing her hair and then said she was, "probably going to head out or try to if I can get a ride." Mr. Graber asked why she was not laying with him and pulled her toward him, where she laid until he fell asleep. At that point, Defendant, "grabbed this gun and I put on my shoes and then walked out the door."  Defendant claimed to law enforcement that she did not take any money, but acknowledged taking, what she described as a little bit of dope.

Defendant would later explain she was in David Priest's Mercedes sedan, at his house, behind a locked door with a window cracked "not very much," when Graber showed up, demanding his stuff back.  She got the stolen gun off the floor and shot him.

    c. <u>Allegations of Prior Conduct by Mr. Graber</u>

Defendant has proffered Kristopher Graber has a criminal history, which she appears to claim somehow impacted her actions.  Defendant alleged in a tribal court filing she, "seen first-hand how this recidivist's behavior was unchecked by any constraints of the criminal justice system."  The government is not aware of any first-hand knowledge Defendant may have.  The government has identified no prior offense

UNITED STATES' MOTION IN LIMINE - 3

by Mr. Graber against Maddesyn George. Rather, like Defendant, his most recent felony was a methamphetamine offense,[1] in 2018.

## LAW AND ARGUMENT

a. <u>404(a)</u>

Federal Rule of Evidence 404(a) provides that, subject to specific exceptions, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). One of the exceptions to the general rule is that "[i]n a criminal case . . . a defendant may offer evidence of an alleged victim's pertinent trait." Fed. R. Evid. 404(a)(2)(B). Where a defendant charged with an assault or homicide asserts a claim of self-defense, the victim's "violent disposition" is "the sort of evidence this rule was intended to encompass." *United States v. Keiser*, 57 F.3d 847, 853 (9th Cir. 1995) *cert. denied,* 516 U.S. 1029 (1995) (citing Advisory Committee note to Rule 404 ("Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray . . .")). Even after a court determines that character evidence is admissible under Rule 404, the court must next turn to Federal Rule of Evidence 405 to determine what form that evidence may take. *Id*. at 855. Rule 405, entitled "Methods of Proving Character," provides:

> (a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> (b) Specific instances of conduct. In cases in which character or a trait of

---

[1] To the extent that Defendant seeks to introduce Mr. Graber's prior controlled substance convictions as prior bad acts, such prior acts may not be admissible given recent changes under Washington State law pertaining to simple possession offenses. *See State v. Blake*, 481 P.3d 521 (Wash. 2021).

UNITED STATES' MOTION IN LIMINE - 4

> character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

Fed. R. Evid. 405.

In terms of the "form of the evidence" of a victim's "violent disposition," the Ninth Circuit has held that "only reputation or opinion evidence is proper to show that the victim of an assault had a propensity toward violence." *Keiser*, 57 F.3d at 855 (citing Fed. R. Evid. 405(a)). As the Court in *Keiser* recognized, evidence of a victim's "violent character does not constitute an essential element" of a self-defense claim. *Id.* at 857. *See also United States v. Geston,* 299 F.3d 1130 (9th Cir. 2002) (in prosecution of police officer for unreasonable use of force against an intoxicated victim, no error in refusal to admit evidence that victim was previously involved in two violent incidents after drinking alcohol; reputation or opinion evidence was proper); *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992) (limiting evidence of prior violence to reputation or opinion evidence).

Under the relevant authority, Defendant may present evidence of the victim's character only through reputation or opinion evidence; proof of character by specific instances of conduct is inadmissible per Rule 405. To the extent Defendant does introduce opinion or reputation evidence of Mr. Graber's alleged violent disposition, the United States is likewise permitted to "offer evidence of the defendant's same trait." *See* Fed. R. Evid. R. 404(a)(2)(B)(ii).

      b. <u>Defendant's Testimony and the State of Mind Exception</u>

One element of self-defense is the defendant's reasonable belief that his or her use of force was necessary. *See Keiser*, 57 F.3d at 853. In *United States v. Saenz*, the Ninth Circuit determined that it was permissible for a defendant to testify as to specific acts of violence committed by the victim, in support of his self-defense claim, to show the defendant's state of mind—i.e., to support the reasonableness of his belief that force was necessary. 179 F.3d 686, 688 (9th Cir. 1999). Thus, Defendant may be able to

UNITED STATES' MOTION IN LIMINE - 5

testify as to specific acts of violence committed by the victim which: (1) she was privy to; and (2) impacted her state of mind and caused her to believe lethal force was necessary when she pulled the trigger on the 9mm pistol and killed Mr. Graber on July 12, 2020.

To date, the United States has not received notice of any specific acts of violence allegedly perpetrated by Mr. Graber about which Defendant was aware at the time of the shooting. Similarly, the United States is unaware of any prior acts of violence perpetrated by Mr. Graber against Defendant and is not aware of any prior acts of violence perpetrated by Mr. Graber to which Defendant was a witness. To the extent Defendant does somehow have personal knowledge of any such acts, per *Saenz,* she may testify about such acts so long as those acts informed her state of mind. *Id.*; *see also United States v. Garcia*, 729 F.3d 1171, 1178-79 (9th Cir. 2013) (defendant's testimony regarding victim's prior violent acts about which defendant had knowledge was admissible as other acts evidence to show defendant's state of mind for self-defense). However, Defendant may not adduce evidence of acts of which she was not aware and, therefore, could not have affected her state of mind at the time of the shooting or her belief force in self-defense was necessary. *See Keiser*, 57 F.3d at 853 ("Keiser makes no claim on appeal that the [victim's violent] incident . . . was relevant to his state of mind at the time of the shooting or the reasonableness of his belief that force in self-defense was necessary.").

    c. Fed. R. Evid. 404(b)

To the extent *Saenz* permits Defendant a viable theory of admissibility for the victim's prior acts of violence, Defendant must meet the Rule 404(b) requirements for admissibility if she seeks to introduce specific instances of the victim's behavior at trial. The rule limiting evidence of other crimes does not extend only to crimes of the accused. *United States v. McCourt*, 925 F.2d 1229, 1232-33 (9th Cir. 1990) (evidence person who previously lived at defendant's address was a convicted felon not admissible to prove that person, rather than defendant, committed the offense of filing false tax returns

UNITED STATES' MOTION IN LIMINE - 6

from that address). Instead, to admit other misconduct of the victim, the accused must satisfy the same standard as the government.

Under that standard – Rule 404(b) – the evidence must (1) tend to prove a material point in issue; (2) not be too remote in time; (3) be proven with sufficient evidence to show that the act was committed; and (4) if admitted to prove intent, be similar to the offense charged. *See United States v. Beckman*, 298 F.3d. 788, 794 (9th Cir. 2002). In this case, Defendant has not provided any Rule 404(b) notice pertaining any alleged prior bad acts of the victim or of any third party. While Defendant has made some indication that she was the victim of abuse—by someone other than Mr. Graber, Defendant has provided no discovery or notice as to these other acts. Such a notice setting forth specific acts is required. *See generally United States v. Gregg*, 451 F.3d 930, 934-936 (8th Cir. 2006) (insufficient proffer, in murder self-defense case, as to specific acts evidence under Rule 404(b)); *See also United States v. Wright*, 625 F.3d 583 (9th Cir. 2010), *superseded by statue* (noting defendant timely filed a Notice of Intent To Present Other Act Evidence under Rule 404(b) and the trial court incorrectly precluded introduction of the evidence).

  a. <u>Testimony the Victim Went to Ditters's With a Shotgun is Not Admissible Under the State of Mind Exception and 404(b)</u>

While the Defendant has provided no notice of its intent to introduce evidence that the victim may have been armed several hours prior to the shooting, the United States has provided FBI reports indicating Kevin Priest and Shannon Edwards went to Michelle McCraigie's A/K/A "Ditters" home at some point *after* the shooting. Kevin Priest reported Ditters told him that Mr. Graber had a shotgun and was looking for Defendant hours before the shooting. Kevin Priest stated, during his FBI interview, there was no reason to believe Defendant would have known Mr. Graber had been to Ditters's house looking for her. (Bates 199). Martin Stanley indicated a similar version of events, but did not detail whether he had heard it directly from Ditters. Stanley also added that the shotgun was a sawed off. (Bates 201). Melissa McCraigie herself was

UNITED STATES' MOTION IN LIMINE - 7

interviewed and stated Mr. Graber did come to her house at all on July 11 or 12, 2020, let alone with a shotgun. She stated she was home and would have known if he had come by. (Bates 00000544).

Ultimately, the Court need not to delve into the factual question as to who said what to whom or whether Mr. Graber in fact did go to Ditters's house with a shotgun after he was robbed. Even assuming, *arguendo*, the victim went to McCraigie's home looking for Defendant, there is no way this impacted Defendant's state of mind, because Defendant was not privy to it. One need not even reach the Rule 404(b) factors about this "other act," because it fails to meet the mental state exception. Defendant cannot show this is an event "about which defendant had knowledge," impacting her state of mind.

Those witnesses who mention Mr. Graber going to McCraigie's home to find Defendant claim to have come into that knowledge *after* the shooting. The United States has Defendant's phone, her text messages, phone records, and her Facebook account. There is no indication in any messaging she received any information about Mr. Graber looking for her at McCraigie's. In her interview with law enforcement, which is over an hour in length, Defendant details Mr. Graber was looking for her and says, "Buddy sent out this message to somebody and I got a screenshot of it sent to my messenger, but it says—what does it say—something about, 'You think she got a lot. I'll get you half of whatever she got to bring her to me,' is what it said." She then noted, "Not even like an hour or maybe half, I don't know how long it was exactly, but he ended up showing up there." Of note, Defendant completely omitted any mention of Mr. Graber going to anyone's home, armed with a shotgun, looking for her. Additionally, during the time between the robbery and the shooting, Defendant was with Cara Campbell and David Priest. Neither reported learning about allegations that Mr. Graber went to Ditters's house prior to the shooting.

    b. Rule 403

Even if "other acts" evidence is relevant and admissible under Rule 404(b), the

UNITED STATES' MOTION IN LIMINE - 8

Court has the power to exclude the evidence under Fed. R. Evid. 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. Because the government is not yet privy to what Defendant intends to offer pursuant to Rule 404(b), the government cannot yet address whether such evidence may be excludable under Rule 403.

## II.     CONCLUSION

The government seeks an order limiting Defendant to reputation or opinion evidence pertaining to the victim's character, and precluding Defendant from eliciting specific instances of the victim's or any third party's alleged misconduct, or cross-examining others about the same, absent notice of the proposed acts, an opportunity of the government to respond, and further order from the Court.

Respectfully submitted July 6, 2021.

        Joseph H. Harrington
        Acting United States Attorney

        *s/ Alison L. Gregoire*
        Alison L. Gregoire
        Assistant U.S. Attorney

        *s/ Richard R. Barker*
        Richard R. Barker
        Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the foregoing with the clerk of the Court using the CM/ECF System, which will send notification of such filing to the following: Steve Graham

*s/ Alison L. Gregoire*
Alison L. Gregoire
Assistant United States Attorney
United States Attorney's Office

UNITED STATES' MOTION IN LIMINE - 10