EXHIBIT 4

OFFICE OF THE
OKANOGAN COUNTY SHERIFF
ANTHONY D. HAWLEY, SHERIFF

ADMINISTRATION, INVESTIGATION AND CIVIL
123 - 5TH AVENUE NORTH, ROOM 200
OKANOGAN, WA 98840
509-422-7200    FAX: 509-422-7217

CORRECTIONS AND COMMUNICATIONS
149 - 4TH AVENUE NORTH
OKANOGAN, WA 98840
509-422-7200    FAX: 509-422-7236

June 4, 2020

Deputy Isaiah Holloway
123 5th Avenue North
Okanogan, WA 98840

Deputy Holloway,

You are being considered for discipline up to and including placing you in an Administrative Leave without Pay status, based on violations of Sheriff's Office policy.

Office policy is established to communicate requirements and guidelines that are determined to be necessary for the organization to be able to function successfully. Alleged violations of policy must be investigated and founded violations addressed in order to ensure the standard is upheld, the team continues to meet the intended outcome of the policy and that the policy remains necessary and relevant.

By your admission, you have conducted yourself in a manner that violates Okanogan County Sheriff's Office policy. An administrative investigation was conducted and indicates the following policy violations:

Okanogan County Sheriff's Office Policy Manual, dated August 2018.
- Policy 16-1-1, Code of Conduct (SHERIFF's Office Section)

    o 1. Member, whether on duty or off, shall be governed by the ordinary rules of good conduct and behavior and shall not commit any act or omission tending to bring reproach or discredit upon the Sheriff's Office.

    o 13. Members shall not perform any acts or make statements oral or written for publication or otherwise which; a) destructively criticizes the Sheriff's Office or its Administrative Staff in the performance of their duties. b) may disrupt or impair the performance of official duties and obligations as officers of the Sheriff's Office, c) may interfere with or subvert the reasonable supervision or proper discipline of Deputies of the Sheriff's Office.

    o 38. Members shall not develop close personnel associations with any inmate, practicing criminal, or develop or maintain a close personal association with any person where such association affronts the community standards and norms.

The following sections of Policy 16-1-1, Code of Conduct were not found to have been violated.

    o 23. Members shall enforce laws in a fair and impartial manner.

    o 33. Members shall not enter into correspondence with any person concerning their official activities except as provided by Sheriff's Office policy, nor use Sheriff's Office stationary or forms for any purpose other than the transaction of official business.

| ADMINISTRATION | INVESTIGATIONS | COMMUNICATIONS | CORRECTIONS | CIVIL |
|---|---|---|---|---|
| AARON CULP | LAURA WRIGHT | MIKE WORDEN | TAMMI DENNEY | BETH BARKER |
| *Undersheriff* | *Chief Criminal Deputy* | *Chief Special Operations Deputy* | *Chief Corrections Deputy* | *Chief Civil Deputy* |

○ 36. Members shall not use their official position or identification for personal financial gain, or obtaining privileges not otherwise available to them except in the performance of duty or to avoid consequences of unlawful acts.

Because the Okanogan County Sheriff's Office is committed to administering policies and procedures in a fair, firm, and consistent manner, it has no choice but to consider disciplinary action.

Prior to rendering a final decision resulting in employment action, you are entitled to a pre-disciplinary hearing (also known as a Loudermill meeting) in accordance with Civil Service rules, Sheriff's Office policy, and the Collective Bargaining Agreement*. The purpose of a *Loudermill* meeting is to give you an opportunity to respond to the allegations against you and the pending disciplinary action. You may present verbal, written, or other information for the County to consider before it renders a final decision.

Your *Loudermill* meeting is scheduled for **Thursday, June 11, 2020 at 1400 in the Sheriff's Conference Room.**

This meeting may be attended by your supervisor at your request. Your union representative may also attend and present information on your behalf if you wish to exercise your Weingarten Rights. Attendance at this meeting is optional on your part.

If you choose to opt out of a *Loudermill* meeting, you will waive your right to respond to this matter and the County will issue its final decision based on the current available information.

I will notify you of my decision concerning any disciplinary action following the meeting. Due to the information and matters being considered, this decision may take several days.

**Please sign below indicating you have received this letter and understand its contents. Please also indicate whether or not you wish to attend the scheduled *Loudermill* meeting.**

Sincerely,

Aaron J. Culp
Undersheriff

cc: Justin Weigel, President, Okanogan County Sheriff's Employee's Association
Laura Wright, Chief Criminal Deputy
Personnel File, Okanogan County Human Resources Department

---

**I have received the original copy of the letter informing me of my right to receive a *Loudermill* meeting** (*check all that apply*).

☒ I wish to attend a *Loudermill* meeting on June 11, 2020 at 1400.

☐ I would like to have union representation at the *Loudermill* meeting.

☐ I do not wish to schedule a *Loudermill* meeting but will provide written or other materials on or before DATE which I would like the County to consider in making its final determination.

☐ I do not wish to attend a *Loudermill* meeting.

My signature does not signify an agreement with the recommended action.

_____          6/9/20
         Signature                              Date

---

* Okanogan County Civil Service Commission Rules and Regulations (dtd, 2017), Section 18, Discipline, and Section 19, Pre-disciplinary Hearing; Okanogan County Sheriff's Office Policy 16-2, Disciplinary System, and Policy 16-3, Supervision & Disciplinary System; and the Okanogan County Sheriff's Employee's Association Collective Bargaining Agreement 2018-2020 (dtd 12/28/2017), Article 21-Discipline and Investigations.

# OFFICE OF THE
# OKANOGAN COUNTY SHERIFF
## ANTHONY D. HAWLEY, SHERIFF

ADMINISTRATION, INVESTIGATION AND CIVIL
123 - 5TH AVENUE NORTH, ROOM 200
OKANOGAN, WA 98840
509-422-7200   FAX: 509-422-7217

CORRECTIONS AND COMMUNICATIONS
149 - 4TH AVENUE NORTH
OKANOGAN, WA 98840
509-422-7200   FAX: 509-422-7236

June 16, 2020

Deputy Isaiah Holloway,

Subject: Letter of Reprimand

This letter is intended to acknowledge that by observation and by record, you are a quality, productive employee of the Okanogan County Sheriff's Office (OCSO), but that you were found to have displayed a seemingly non-characteristic set of behaviors and lapse of judgement on at least one occasion this past winter. It is my intent that having identified this lapse that you can learn and grow from the process of addressing it through this reprimand.

On March 7, 2020, a citizen complaint was received by the Sheriff's Office claiming that you were, 1) engaged in an inappropriate relationship with an individual known to be a practicing criminal; and 2) that you were, a) failing to do your duty in exercising undue discretion with regard to continued criminal activity by the individual; and b) that you warned the individual about certain law enforcement actions being planned regarding the individual.

On March 8, 2020, you were placed in an Administrative Leave with Pay status by Chief Criminal Deputy Laura Wright when you disclosed that you needed fitness for duty consideration. Additionally, you further disclosed to Chief Wright that you had engaged in an extra-marital affair and other adverse behaviors.

Upon your return to work, an Administrative Investigation was completed by Chief Deputy Wright into the citizen complaint. Through investigation, it was found that your actions were in violation with several subsections of the Okanogan County Sheriff's Office Policy Manual, primarily supported by an admission from you. The following policies were found to be violated:

Okanogan County Sheriff's Office Policy Manual, dated 8-15-18:
- Policy 16-1-1, Code of Conduct (SHERIFF's Office Section)

   o Subsection 1. Member, whether on duty or off, shall be governed by the ordinary rules of good conduct and behavior and shall not commit any act or omission tending to bring reproach or discredit upon the Sheriff's Office.

   o Subsection 13. Members shall not perform any acts or make statements oral or written for publication or otherwise which; a) destructively criticizes the Sheriff's Office or its Administrative Staff in the performance of their duties. b) may disrupt or impair the performance of official duties and obligations as officers of the Sheriff's Office, c) may interfere with or subvert the reasonable supervision or proper discipline of Deputies of the Sheriff's Office.

   o Subsection 38. Members shall not develop close personnel associations with any inmate, practicing criminal, or develop or maintain a close personal association with any person where such association affronts the community standards and norms.

| ADMINISTRATION | INVESTIGATIONS | COMMUNICATIONS | CORRECTIONS | CIVIL |
|---|---|---|---|---|
| AARON CULP | LAURA WRIGHT | MIKE WORDEN | TAMMI DENNEY | BETH BARKER |
| *Undersheriff* | *Chief Criminal Deputy* | *Chief Special Operations Deputy* | *Chief Corrections Deputy* | *Chief Civil Deputy* |

E-MAIL: OCSO@CO.OKANOGAN.WA.US          HTTP://OKANOGANSHERIFF.ORG

Additionally, the investigation found that your actions were inconsistent with the Law Enforcement Code of Ethics as outlined in Policy 1-2, The Code of Ethics:

I will keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty

As a member of the Okanogan County Sheriff's Office you are entrusted by this office and the members of the public with the responsibility of maintaining public safety through the diligent application of law and order. It is the mission of this office to provide quality, professional, and ethical public safety services to the residents, visitors, and communities we serve. Your actions, while not duty-related, were counter to our mission and the environment of trust that it requires.

Your actions have harmed the Okanogan County Sheriff's Office and possibly your teammates by bringing into question whether or not an illicit relationship with a known criminal impacts your ability to be trusted to conduct your official duties free from external influence. This is especially important because any perceived wrong-doing from an outside party could very easily associate your actions to you as a deputy, and not as a private citizen.

Please be advised that any continued or future misconduct could result in further disciplinary action, up to and including termination.

You are also hereby informed that you have the right to appeal this decision in accordance with the current Collective Bargaining Agreement and the Civil Service Rules and Regulations.

Regards,

Aaron Culp
Undersheriff

cf: Personnel File

## Okanogan County Sheriff's Office

### DEFERRED DISCIPLINE AGREEMENT

This Agreement is hereby entered into between Okanogan County Sheriff's Office (hereinafter referred to as "County") and Isaiah Holloway (hereinafter referred to as "Employee"). The referenced term, "County" is used in the Okanogan County Employee Association's Commissioned Collective Bargaining Agreement to refer to the organization where specific to the management rights of the Sheriff's Office. The purpose of this Agreement is to provide Employee with the opportunity to demonstrate the ability to comply with the established standards of conduct as outlined in Office policy in lieu of a two-day Administrative Leave without Pay (suspension).

1. On May 29, 2020, an administrative investigation concluded that the Employee had engaged in conduct that violated the Sheriff's Office Code of Conduct policy (Investigation No. A20-01). On June 16, 2020, following a *Loudermill* hearing, the violation was sustained and discipline consisting of a Letter of Reprimand and a two-day suspension via administrative leave without pay was imposed. However, in consideration of Employee's exemplary record and willingness to be held accountable, the two-day suspension portion of discipline may be deferred, upon Employee's execution of this Agreement. In consideration of such deferral, the Employee agrees to the terms and conditions of this Agreement.

2. The two-day suspension imposed on Employee shall be deferred for four-months from the date of this Agreement, subject only to the requirement that employee demonstrate behavior commensurate with the Sheriff's Office Code of Conduct and the Law Enforcement Code of Ethics as outlined in the Okanogan County Sheriff's Office Policy Manual.

3. Failure to successfully demonstrate behavior commensurate with the Sheriff's Office Code of Conduct, as demonstrated by a further violation of the Code of Conduct, within the deferment time period specified by this agreement, will constitute failure to comply with this Agreement, resulting in imposition of the two-day suspension without pay. To void this agreement and vacate the deferment of Administrative Leave without Pay, the subsequent violation must be substantiated or founded through a formal administrative investigation conducted by the Sheriff's Office. The administrative investigation is not bound by the timeframe specified in this Agreement and as such will not be required to be completed within the four-month deferral period, but is subject to Sheriff's Office policy, the Collective Bargaining Agreement, and Civil Service Rules.

Deferment Agreement                                                                                    Page 1 of 2

4. The Employee understands that the two-day suspension without pay referenced in this Agreement is discipline for the prior violation only and that any behavior or actions that would constitute a failure to comply with this Agreement may be subject to additional disciplinary action irrespective of this Agreement. In other words, any such disciplinary action taken with regard to a subsequent founded violation shall be unrelated to the deferred two-day Administrative Leave without Pay specified in this Agreement.

5. This Agreement in no way limits the County's ability to discipline or terminate the Employee in the normal course for conduct arising during or subsequent to Employee's participation in this deferment Agreement. Nor does this Agreement in any way limit the County's right to use or make reference to the incident(s) described in paragraph 1 as a basis to justify a decision to discipline or terminate Employee as progressive discipline for conduct arising during or subsequent to Employee's participation in this deferral Agreement.

6. Refusal or failure to comply with any of the terms of this Agreement will constitute breach of this Agreement and be grounds for immediate vacation of the deferment and imposition of the two-day Administrative Leave without Pay.

7. Employee understands that this Agreement is final and that if deferment is vacated and discipline enacted as described within this Agreement, the only issue subject to a grievance is whether the Office has established a violation of this Agreement. In the event of arbitration, if an arbitrator concludes the Office has established a violation of this Agreement then the arbitrator may not modify the County's disciplinary decision. In executing this Agreement, Employees waives any and all claims against the County arising from Investigation No. A20-01 and the subsequent discipline imposed.

ISAIAH HOLLOWAY                    Date          6/16/20

AARON J. CULP                      Date          6/16/20
Undersheriff

LAURA WRIGHT                       Date
Chief Criminal Deputy (as witness)

Deferment Agreement                                          Page 2 of 2

Final: Received
5.29.170
AC.

# OFFICE OF THE
# OKANOGAN COUNTY SHERIFF
## ANTHONY D. HAWLEY, SHERIFF

ADMINISTRATION, INVESTIGATION AND CIVIL
123 - 5TH AVENUE NORTH, ROOM 200
OKANOGAN, WA 98840
509-422-7200   FAX: 509-422-7217

CORRECTIONS AND COMMUNICATIONS
149 - 4TH AVENUE NORTH
OKANOGAN, WA 98840
509-422-7200   FAX: 509-422-7236

## Internal Investigation of Deputy I. Holloway U17

**Witnesses:**

1. Alfonso Velasco, ▮▮▮▮▮▮▮ Oroville, WA 98844
2. Jessica Soria, ▮▮▮▮▮ WA 98855
3. Deputy Eric Orr
4. Samantha Kubeck, ▮▮▮▮▮▮▮ Oroville, WA 98844

030720 I received a call from dispatch at about 0100 hours stating they received a phone call from a male about possible inappropriate involvements between Deputy Holloway and Vanessa Velasco-Ortega.

This is the email that I requested Communications Deputy Rochelle Cline send to me:

**From:** Rochelle F. Cline
**Sent:** Saturday, March 07, 2020 1:09 AM
**To:** Laura Wright <lwright@co.okanogan.wa.us>
**Cc:** Susie Ortiz <sortiz@co.okanogan.wa.us>
**Subject:** PHONE CALL

I received a phone call from a male stating that detective Holloway has been texting vanessa velasco how to get out of her charges and that they are in an intimate relationship. The male was speaking erratically and I asked him to repeat information a few times so a female got on the phone and repeated the information. The male then said he also has proof of what's going on. I asked the female if it was O.K. to give this number to someone so they can call back and the male stated no and the female stated yes. The number returns to a Samantha keveck ▮▮▮▮▮▮

*Rochelle Cline*
*Communications Deputy*
509-422-7232
rfcline@co.okanogan.wa.us

CONFIDENTIALITY NOTICE:
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

| **ADMINISTRATION** | **INVESTIGATIONS** | **COMMUNICATIONS** | **CORRECTIONS** | **CIVIL** |
|---|---|---|---|---|
| AARON CULP | LAURA WRIGHT | MIKE WORDEN | TAMMI DENNEY | BETH BARKER |
| Undersheriff | Chief Criminal Deputy | Chief Special Operations Deputy | Chief Corrections Deputy | Chief Civil Deputy |

E-MAIL: OCSO@CO.OKANOGAN.WA.US        HTTP://OKANOGANSHERIFF.ORG

I also requested that they download a copy of the recording from the phone call and send it to me. Sgt. Ortiz did that and sent the recording to me.

After waking up this date I tried to call the number provided by dispatch. A male answered the phone and stated that Samantha was not there and I gave him my name and number and asked her to call me back. I never got a return call and when I looked up the name in Spillman I came up with nothing. I researched the name Vanessa Velasco and found Vanessa Velasco-Ortega at

030820 At 1303 I received a text from Deputy Holloway that said:
"Not sure who to reach out to at work but figured you would be the best person. I have already received counseling with my wife through a pastor. Since my father past 3 years ago I have been in declining mental health. Since the shooting last year, I have fell off of a cliff into depression, anxiety and PTSD. I have tried to cover it all up for this "tough guy" cop job I thought we had to be. Instead of seeking help I fell into a world of porn addiction, sexting and now an affair. I need help and I'm not sure where to turn to.
I advised Sheriff Hawley of the text and we both drove up separately to Holloway's residence to talk with him.

I arranged for help through Code 4 Northwest and got him into contact with their counselling services. 031020 At about 0737 Holloway was being contacted by Nick Bowers from Code 4 Northwest. Holloway updated me on his status and apologized for 'self-destructing'.

I issued Holloway a letter that he would be on administrative leave until he was cleared to return to duty. I stayed updated with Holloway throughout his leave.

Holloway returned to work on 04/22/20 after being cleared by Dr. C. Ashworth, Colville.

After Deputy Holloway returned to work I started to research the complaint as no one had called back that had originally been tied to the phone call.

050520 I drove to ▮▮▮▮▮▮▮▮▮▮▮▮ and located Alfonso Velasco and the residence that Vanessa (his sister) was living in. Jose Cosino answered the door and told me Vanessa wasn't there and was shopping with her mother in Omak. I could immediately tell that Cosino was lying from his actions when he tried to shut the door quick to avoid me seeing inside the home. I stayed in the driveway and called the phone number I had for Vanessa -▮▮▮▮▮▮▮▮ The phone was answered by Vanessa's mother and she advised that Vanessa was at home, not with her and that she would call her son to get Vanessa for me.
I walked over and spoke with Alfonso, who went and retrieved Vanessa from the house. I sat down with Vanessa and explained why I was there.
Vanessa told me the following:
- She knows Deputy Holloway
- She has heard the rumors
- She hasn't had any relationship with Holloway
- She knows he married with kids
- She says people are mad at her because they think she gets special treatment from the cops

I watched Velasco while she was talking, she gave me indicators that she was lying about the things she was saying. She would umm and ahh throughout. I told her there was no need to cover for Deputy Holloway and she told me she wasn't.

I asked her outright if she has had a sexual relationship with him and she said no.

I cleared the residence and went to the intersection of O'Neil Rd and Swanson Mill Rd and sat off the side of the road. After about 10 minutes Alfonso Velasco drove up to my location and spoke to me.

Alfonso told me the following:
- He believes that Deputy Holloway is having some kind of relationship with his sister, Vanessa.
- Vanessa has bragged to him and his mother about texting Holloway.
- He has seen a picture texted to Vanessa awhile back
- Vanessa told him that Holloway has let her go instead of booking her in jail
- Vanessa brags about getting special treatment from Holloway
- He thinks she needs to be treated like he and everybody else.
- He thinks Holloway is a bad cop that is doing wrong
- He has had his own dealings with the police
- His sister has bad drug problems
- His other sister would have more information, she has seen the texts.

050620 I called Alfonso and asked what his other sister's name was, he told me Jessica. I asked him if he thought Jessica would talk to me. Alfonso said that he didn't know and would give Jessica my number if she wanted to call. Alfonso told me that Samantha Kubeck had called in to complaint about Deputy Orr in prior months and never received a call from Deputy Orr's supervisor. Alfonso admitted that he had been dating Samantha and they hadn't talked for a week. I told Alfonso that I had personally called Samantha a couple of months ago and she never returned my phone call.

The original call to dispatch was a male using Samantha Kubeck's phone number, possibly Alfonso.

1422 I received a message from ▓▓▓▓▓▓ Jessica Soria, stating she would talk with me about Vanessa.

1715 I called Jessica back and planned to talk to her at 0900 on 050720.

1738 I received a call from Alfonso, he was upset as Vanessa just came home and was angry saying that Samantha Kubeck was the person that told on her and she was going to beat her up.

050720 At 0900 I recorded the interview with Jessica Soria when I met her at the Legion Park in Okanogan. The recording was downloaded and saved for evidence. Soria told me numerous things as well as her personal opinion on the complaint. I asked her multiple questions and gathered the following from her:
- Her mother told her because Vanessa told her mother about Holloway
- Vanessa, isn't normal anymore and Vanessa told her
- She wanted to see him, she knew it wasn't right and knew he was an officer
- Her mother said she was going out with an officer; the officer was taking advantage of her 'not being normal' (drug user)
- Here sister will do anything when on drugs
- Vanessa doesn't talk about him when she's not on drugs
- This is over a month ago that she found out
- We're not in Mexico, this can't be happening
- She (Vanessa) looked through her phone and she could tell there were lots of messages between them, she got to the picture
- The officer was standing next to a football player or something like that. It was a picture that he sent her.

- She didn't tell anyone because she didn't know where to go
- Then she found out he was married.
- Vanessa said she was serious and she told her it wasn't right
- He's nice to me, he likes me, he respects me, Vanessa said.
- She felt special when he would kiss her, Vanessa told her that.
- He would kiss her on the forehead
- Her mother felt there was something more than just a friendship because when they were looking for her he would let her know. That when they (the police) got there she would be gone, Vanessa told her this.
- She reported Vanessa stealing from her and her mother, her mother isn't willing to say anything
- They, Vanessa and the officer (Holloway) are both doing wrong, they both need to learn.
- Vanessa got out of jail and asked about Holloway to Jessica, she told her she didn't know
- Holloway never got a hold of her after she got out of jail and she was upset about that
- Vanessa blamed this on Jessica saying that it would ruin 14 years of his career
- She said she didn't report him and it was wrong, what they were doing.
- Less than a month ago that she found out someone reported this
- She hasn't seen him (Holloway)
- Vanessa called her from their mother's phone and was protecting the officer, he has a family.
- Vanessa told her his name, but she can't remember it
- He was tall, darker skinned, not dark, lights were from the football field, he was skinny, he looks pretty young, in his 40s, might have grey.
- She hasn't seen anything but the texts and the picture with him.
- He actually was looking for her with the other officer he was training and he found her first and got up to her, she was upset, but it was weird and he grabbed her and gave her a kiss on the forehead, Vanessa told her this.
- Vanessa was drugged up, she felt special
- He backed up and the other officer read her rights and she thinks it was the theft she reported
- She couldn't believe they were arresting her.
- She said that she asked why he didn't warn her and said that he said if it was him he wouldn't have arrested her.
- She wasn't there at the time and Vanessa told her this.
- She didn't mention about the other officer there at the time
- She was pulled over one night by two deputies, 'he' (Holloway) was training the other one.
- She was driving from her mother's house, home to get ready for work, between 8-1030
- She had a headlight that wasn't working right and after she pulled over for gas.
- She saw them (patrol car) turn around and didn't want to get a ticket, they pulled in behind.
- Her son fixed it and they let her go.
- They (she and Vanessa) don't text or call much, only when Vanessa needs her for something.
- She was later told by her mother that Vanessa called and said she was stopped and she should thank Vanessa because she didn't get a ticket because of her.
- Vanessa has offered Jessica, help her with 'protection' through him (Holloway), she doesn't want that – this isn't Mexico, they do that in Mexico.
- She is guessing that it was a text that they let her know and that Vanessa asked him to not give her (Jessica) a ticket.

- This should be confidential, if people are stopped by the police.
- She doesn't think Vanessa has a scanner, she doesn't think she'd waste her time getting one.
- The officer won't tell about the other crimes.
- Her mom is mad and she won't tell, her brother is upset, and another brother, because Vanessa has had problems with juvenile
- They don't like that the officer is worse than them.
- She won't lie to me because she thinks this is wrong and he shouldn't be working as a police officer.
- Vanessa showed up while she was on the phone with me.
- She hasn't seen them together
- Vanessa told her that the officer was texting her.
- Vanessa was upset when she got out of jail because he hasn't texted her.
- She only knows about this year, she doesn't know about last year.
- The officer would go to pick Vanessa up and hang out with her before work.
- She doesn't know if he was in a patrol car
- Vanessa hasn't mentioned being in the patrol car with him.
- The officer would drop her off and go to work.
- The officer would know where she was at that time, he shouldn't know about that as an officer.
- Vanessa wouldn't go into details, only that he was good looking, she didn't mention if anyone else was around.
- Vanessa made it sound like they were doing others things (sexual in nature)
- Her mom thinks they are having sex
- She thinks the officer needs glasses because they aren't that good looking in her family
- She understands his wife is good looking, she'd give him (the officer) glasses.
- Vanessa told her "I know I'm not the only one, there are others"
- Vanessa said at least if he gives her five minutes of his time – she feels special.
- He took advantage of a drug addict.
- She (Jessica) only found out recently
- She (Jessica) doesn't know any other names.
- Alfonso and her other brother just wanted to get to the bottom of this.
- Enrique Velasco 12/28, she doesn't know the year her brother was born.
- Vanessa doesn't really have friends, she keeps stuff to herself
- She thinks the jail looked through her phone, that was the phone we would see things on
- Vanessa has changed her phone number more than once and Vanessa blocks her regularly.
- She won't let anyone near her phone, she uses WIFI calling and downloads apps to text
- 509-732-3341, not sure this is the number she used during this.
- Samantha Kubeck was dating her brother Alfonso, but she thinks they aren't talking lately.
- Vanessa said that Samantha said stuff and she was going to beat her up.
- She's being harassed by an officer, Samantha.
- Vanessa had blamed her and now Samantha.
- Alfonso told her (Jessica) a man called in to report it (I told Alfonso 050620)

I stopped the recording at 0945 hours.

I contacted Karen Beatty in IT and requested phone records for Deputy Holloway's work phone from April 2019-April 2020. She advised that the only records she had access to were from 09/20 to present. This was the length of time with our new iPhones and the prior phone there was no texting.

I contacted Chief Worden in dispatch and requested the AVL log for Orr and Holloway. He was only able to locate two days of Holloway and the rest were for Orr. He provided CAD radio logs for both.

050720 At about 1504 I met with Kubeck at her place of work in Prince's Store in Oroville. I advised Kubeck that she was being recorded and with her permission. I asked Kubeck to tell me what she knows about Vanessa Velasco-Ortega.

- She said that Alfonso Velasco was the person that answered my call (from the original call to dispatch for the complaint) and didn't tell her I called.
- Alfonso was the person that called dispatch (for the original complaint)
- Alfonso had been drinking, this was an ongoing thing and his sister has been running around with Deputy Holloway.
- She only had one encounter with Deputy Holloway when he was training Eric Orr
- Vanessa told her that she had been sleeping with Deputy Holloway.
- The rumors were that Deputy Holloway is the father of her youngest child that is 8 months old.
- There were text messages on her (Vanessa's) phone, she hasn't seen the messages but (Vanessa's) sister and her mother have.
- He had been talking for days about the cops that got away with so much around here and angry that his little sister is on drugs and the cops are supposed to be protecting everybody and she is using
- She doesn't think he should have made the phone call and she shouldn't be involved in this and it's not her place, this has turned into a huge thing.
- She hasn't seen them (Holloway and Vanessa) together.
- Her only call with seeing Deputy Holloway is a call at the Camary Motel with a person that left their belongings in the room.
- She was dealing with Deputy Orr and Holloway showed up with Patterson that night.
- She has known Deputy Orr when he was with Oroville and through church.
- She called once before because Alfonso made her, he made her make the call.
- She said that Eric Orr was rude to her, he was in uniform and he walked between her and a coworker and interrupted their conversation.
- It wasn't a big deal, she left a message for his boss and didn't get a call back.
- It might have been 3 weeks ago and she thought it was Tait Everett (I suggested the name).
- She wasn't really wanting a call back, Alfonso pressured her into calling.
- Alfonso just knows that his mother and sister Jessica have seen things
- She has only had two conversations with Vanessa
- Vanessa said that they were sleeping together and Deputy Orr and Deputy Holloway would show up at Jeff Clark's house, on and off duty (together)
- They were hanging out there even off duty, it's kind of weird
- This was before Vanessa went to jail this last time.
- She gave her a ride to Tonasket maybe two weeks ago to go get her car.
- They talked and Vanessa wanted to tell her everything that Eric Orr said about her, that she (Vanessa) didn't want to get involved.
- Vanessa hadn't seen Holloway on duty working and wondered if he got in trouble.
- Vanessa had been texting him (Holloway) and he had never gotten back.

- Mom and Sister told her about text messages that Vanessa got, Vanessa breaks into houses and supposedly he told her that next time she broke into that she should where bigger shoes.
- She felt that her mother and sister took it seriously.
- They are feeling that since they are sleeping together that they are tipping her (Vanessa) off to help her.
- She hasn't saved any numbers from texting her (Vanessa).
- Alfonso hasn't told her that he's seen anything.

I finished the interview at 1519. I asked Kubeck if she was dating Alfonso now and she said no, I asked if she would text any numbers she located for Vanessa and she agreed to.

051220 I finished going through the statements and reviewed the phone logs from Deputy Holloway, nothing stood out as repetitive other than to deputies he worked with.

Alfonso Velasco has not come forward to complete a recorded statement about this investigation. Although he has called often for ongoing issues at his parent's home that Vanessa was trespassed from recently. Neither Kubeck or Soria have re-contacted me with phone numbers.

051220
**Current allegations:**
1. Sexual relationship with Vanessa, unknown whether on duty or off. Statements allege prior to work shift.
2. Statements of texting back and forth with Vanessa, possible sexual in nature.
3. Allegations that Vanessa is getting special treatment or not being arrested because she has this relationship with Deputy Holloway.
4. Alleged texts that tip off Vanessa prior to arrest to avoid being arrested, one of that he might have told her how to commit burglaries and not get caught.
5. Watching pornography, unknown while on or off duty and where a work computer

051320 At about 1002 I started the recording of the interview with Deputy Holloway. I read the entire Garrity statement to Deputy Holloway. He did not have any other person in the interview with him. Holloway told me the following:
- He didn't know exact dates
- This started back in December 2019
- She (Vanessa) had been texting him, he gave her his personal number
- She (Vanessa) had his work number from Al Price
- He knew her from a long time ago and had recovered stolen property out of her car, she was not the suspect but led him to a suspect.
- She (Vanessa) contacted him to see if she was named in a report for ratting someone else.
- He met with her on two occasions
- Both times in December, maybe later December.
- He met her on days off in and around Oroville.
- They met at Bud Clark Field, baseball field
- She (Vanessa) would walk there to meet him.
- He didn't know where she came from, he thought she had a house on Swanson Mill Rd.
- It was dark out when they met

- They had sex twice in his personal vehicle
- There was never any more after those two times, they would just text
- She (Vanessa) was getting into a bunch of trouble and he didn't meet up with her again.
- He was training Deputy Orr and he dealt with Vanessa
- Vanessa didn't ask him for any favors dealing with charges etc., she specifically told him that she expected him to do his job even after what happened.
- Several times where he had Orr go arrest her for things during the shift.
- One time they passed her car and Orr missed it and pointed out that he missed her car and Orr turned around and contacted the vehicle. (she was cited)
- Another time they were in Oroville arresting a guy on a warrant and he said, hey she stole stuff out of my vehicle in Oroville and he said there wasn't anyone working in Oroville at the time so they took the case and investigated it
- He said that he had seen the stolen items in her car 10 minutes before at Clark's
- He recognized giant beer bottles and this guy said he was missing giant collector beer bottles and we told him we knew where the stuff was at and where she was at.
- He was never asked by her not to do his job or let her go.
- Orr always wanted to book suspended drivers
- At one time he said that Orr stopped her (Vanessa) as a suspended driver, it was after 0300 hrs and as Orr's FTO he said that a supervisor wouldn't approve OT for taking her to jail at this point in the shift.
- So, he gave her a ticket that time.
- He knew they wouldn't be approved for overtime having to drive from Oroville.
- He hasn't ever texted her to avoid her being arrested
- She would text him asking where they were and he would answer "all over, don't worry about it" meaning that he wouldn't tell her.
- He never told her 'cops are coming' and he and Orr were sneaky stealth.
- He had worked an agreement with Clark that he could show up on duty at any time.
- He doesn't every remember texting her to tell her Hirst and Orr were coming to arrest her.
- He didn't ever meet her (Vanessa) at Clark's during this time
- He has never gone to Clark's off duty
- He recalled a traffic stop that Orr did at the Junction
- Orr didn't do anything because she (Jessica) only had a headlight out
- She was complaining about her sister (Vanessa)
- He doesn't recall texting Vanessa during the traffic stop
- He has not told Orr what he could or couldn't do, except the overtime approval
- He has not been to her place at Swanson Mill off duty and hasn't picked her up there off duty.
- He has driven past there off duty because he goes to the dump and his brother-in-law lives a mile away but he hasn't gone there off duty
- He has texted her in a sexual nature – on his personal phone
- He thinks there was a little texting after the two times in December, but he wasn't 100% mentally there and then he didn't realize the crazy bad stuff she was doing until a little later
- That led to no more contact
- He only 'sexted' with her and met her twice
- He was surfing the internet for pornography before even the two meetings with her (Vanessa)

- He was going to work and thought he was dedicated at work and then when he wasn't at work he was just off
- He used his personal computer at home to look at pornography, he used his personal phone for texting with Vanessa.
- He is sure that she might have texted him on his personal phone while at work.
- There are no photographs of him sent to her, she might have sent two profile pictures
- No naked pictures between either of them, only texted conversation
- Afterwards it was all dwindling down
- Maybe two-three weeks before he texted me (Chief Wright) that he had stopped.
- She was doing stupid shit so that's when he was like, so he stopped texting
- He isn't sure of the specific dates, he's been through lots
- He thought she went to jail
- He has blocked her number, he hasn't changed his phone number
- He said she changed her phone a couple of times and he blocked two numbers and he thought she might have used an app to text.
- He will try and get the numbers but he has a long list of the numbers from others that are blocked and he might not be able to identify her two
- He hasn't given her any preferential treatment, I could ask Orr
- He doesn't know if anyone saw him meet with her.
- He hasn't done this with anyone else but her
- She would say stuff like that to him – "you talk to all these girls", he told her no.
- He's been hearing that for years.
- He has not used his work computer, work time or phone for any of this
- He's heard people talking about stuff going on, but no contact from anyone else.
- He's talked to her mother once with Orr
- He doesn't know her brothers and hasn't talked to them
- Orr knows her brothers, Orr stopped a brother once.
- Orr mentioned that one of Vanessa's brothers was mad at him for splitting up he and a girlfriend.
- She says a lot of weird stuff to Orr, they don't get along
- She goes off and starts screaming and stuff that I don't understand.
- When the bottle thing happened (theft) Xavier (was in the back seat)
- She said why didn't you tell me he was here?
- He thought she was referring to Xavier.
- He thought he heard from Al Price about breaking into a house but he doesn't remember anything about her sister and a theft.
- He hasn't done anything inappropriate with her in front of Orr when he was there to arrest her
- Orr has been told about what went on, he thought he owed it to Orr to tell him and tell him he was sorry
- Vanessa has said stupid stuff before, (about not arresting people or such) but he just arrested people, she might have just said they were nice people.
- His stats were pretty high, they arrested people on a daily basis
- He hasn't ever pulled his AVL to avoid people knowing where he was.
- He did have AVL problems working with his license plate reader.

1050 I stopped the recording.

051420 I sent an email to Deputy Orr and requested to meet with him about my investigation. He called and was eager to meet today. I approved him overtime to start an hour early to meet up in the mid-valley area to talk.

Deputy Orr called and advised that he just wanted to meet today and I advised he could check into service early and meet with me. Eventually he met me at my office.

051420 At 1710 hrs I started the recording with Deputy Eric Orr. I read Orr Garrity warnings from the CBA. I asked Deputy Orr several questions to see what information he could add to my investigation regarding Deputy Holloway. Below are the answers to the questions.

- Deputy Orr stated that he knew Vanessa Velasco-Ortega
- He has arrested her multiple times
- Frequently he was along with Deputy Holloway when they contacted Vanessa, she was regularly at Balmes Rd.
- They would talk to her, sometimes she would be leaving when they got here.
- Deputy Holloway didn't ever ask him not to write a ticket and only one time at about 0330 hrs they were in Oroville and he had to drop Deputy Holloway off at his vehicle. They had stopped a vehicle and Vanessa was driving, he had been taking all suspended drivers to jail but he said that he probably wouldn't be approved for overtime because the office would be paying for both of them to be on overtime to take her to jail. He (Holloway) said to call Sgt. Everett to make sure but he didn't think it would be approved. He just wrote her the ticket.
- Holloway hasn't ever tried to stop him writing tickets or booking anyone, only a suggestion for booking Vanessa.
- He has talked to Jessica Soria once at the gas station because they had like a brake light out, he didn't stop her but pulled up behind her. It was just her, he didn't know at the time that she was Vanessa's sister. He just wanted to tell her the light was out.
- Deputy Holloway hasn't mentioned Vanessa anywhere outside of work.
- He hasn't ever been off duty with Deputy Holloway to see Vanessa
- He hasn't seen Deputy Holloway on duty try to talk to Vanessa alone when he has been there.
- He hasn't seen any texts between them and he hasn't been told about any, he only strictly worked while with Deputy Holloway
- Holloway only explained things after he came back to work.
- He didn't notice anything while working that was out of the ordinary, just work and he left him to make his own decisions
- He has had people ask where Deputy Holloway was in the last few months
- No one has ever told him they have seen them together
- He had no idea that anything was going on at all
- He just kept working and didn't even notice Deputy Holloway was gone.
- Deputy Holloway told him that he f'up and had to take some personal time
- Deputy Holloway said that people were saying that he allowed her to get away with things that he wasn't doing his job to the fullest.
- He arrested her a lot while he was in the car on FTO, Deputy Holloway would point out when she would drive past.
- Deputy Holloway encouraged him to get out and notice things and be pushy.
- He knows Vanessa's brothers from high school

- He did find out her brother was suspended and he waited until he could see who was driving and Alfonso got out and confronted him. He told him he was making sure he wasn't driving.
- He hasn't arrested Alfonso for DUI, Deputy Covarrubias arrested him
- Alfonso only ever mentioned that Vanessa told them (Orr and Holloway) that he was suspended and Alfonso stated that his sister was a lying, drug user.
- Alfonso has not stated anything else
- Vanessa said she didn't get along with that brother
- He has been once to the Swanson Mill house to find her for a warrant and talked to her mother who said she wasn't there.
- Samantha Kubeck, dating Alfonso, knew her a little bit.
- Knew from prior contacts, at the Camary Motel where she worked
- Talked to her and would visit with her when he was Oroville Police
- Alfonso didn't like Orr and he told Kubeck that Alfonso wasn't good news, his personal opinion
- Then somehow Alfonso was upset they were talking and he (Orr) stopped talking to Kubeck
- He thinks Alfonso was maybe upset with him when he contacted him about driving suspended.
- He hasn't talked to her since, he deleted her on Facebook, she tried to friend him again.

1723 I ended the recording. All records were downloaded into the investigation file.

**Current allegations:**
1.  Employee had an intimate relationship with a female, not his wife, who is known to the employee as a practicing criminal.

- Deputy Holloway admitted to having two separate incidents where he met Velsaco-Ortega and had intimate relations with her in his private vehicle on his off-duty time during the month of December 2019 in the park in Oroville. I have interviewed Deputy Orr, Vanessa Velasco-Ortega, Alfonso Velasco, Jessica Soria and no one has any details or has any first-hand observations of anything related to this. (The rumor that suggested that Holloway is the father of Velsaco-Ortega's 8-month-old child could not be possible with the evidence showing the relationship occurring in December 2019).

2.  The employee could have used County owned phone & computer for personal use and/or communications with a known criminal.

- Deputy Holloway admitted to texting back and forth with Vanessa, but nothing sexual in nature. Soria said she saw texting, but couldn't read it and only saw one picture of Deputy Holloway (couldn't remember his name) next to a 'football' player on Vanessa's phone, but taken possibly at school. Alfonso stated that Jessica had seen the texts, but he hadn't. This allegation is founded through Deputy Holloway's admission, but nothing substantiated through phone records, texting records etc., as all have been purged through Verizon. Deputy Holloway denied any photographs were exchanged that were sexual in nature. Deputy Holloway admits to looking at pornography while off duty on his personal computer at home. I found no evidence that he was doing this on duty with County owned phone or computer. The IT department was not able to check prior sites that he could have got to while on duty. In April as Deputy Holloway came back to work the hard drive on his computer quit and we were not able to access anything.

3. That the employee modified the performance of his duties to overlook criminal activity or to warn the criminal about police activity targeting her.

• Deputy Holloway denied any special treatment or avoiding charging Vanessa as a result of this relationship. Deputy Orr denied that Deputy Holloway had ever asked or ordered him not to arrest or cite Vanessa throughout FTO time. I checked with Spillman and found that Vanessa had been booked 12 times from April 2019 through to March 24, 2020. This is a very high amount of bookings, they were for DWLS 3rd, Assault 4th, Possession of Stolen Property. Deputy Holloway denied sending any texts or communicating with Vanessa so that she would avoid arrest or how to avoid being caught when she committed burglaries. I specifically asked him if he told her to wear larger shoes while committing the burglaries, he denied this. There is no data to substantiate this claim as all has been purged through Verizon. The company purges after 7 days due to the large volume of texts. Also, the large amount of arrests show that she was dealt with appropriately.

## Possible Policy Violations based on Allegations:
Policy 1-2, The Code of Ethics

Policy 16-1-1, Code of Conduct
SHERIFF's Office Section:
1. Member, whether on duty or off, shall be governed by the ordinary rules of good conduct and behavior and shall not commit any act or omission tending to bring reproach or discredit upon the Sheriff's Office.
13. Members shall not perform any acts or make statements oral or written for publication or otherwise which; a) destructively criticizes the Sheriff's Office or its Administrative Staff in the performance of their duties. b) may disrupt or impair the performance of official duties and obligations as officers of the Sheriff's Office, c) may interfere with or subvert the reasonable supervision or proper discipline of Deputies of the Sheriff's Office.

23. Members shall enforce laws in a fair and impartial manner.

33. Members shall not enter into correspondence with any person concerning their official activities except as provided by Sheriff's Office policy, nor use Sheriff's Office stationary or forms for any purpose other than the transaction of official business.
36. Members shall not use their official position or identification for personal financial gain, or obtaining privileges not otherwise available to them except in the performance of duty or to avoid consequences of unlawful acts.
38. Members shall not develop close personnel associations with any inmate, practicing criminal, or develop or maintain a close personal association with any person where such association affronts the community standards and norms.
43. Members will perform their duties in a complete and competent manner.

**Violations supported by Administrative Investigation Findings**:

Policy 1-2, The Code of Ethics

Policy 16-1-1, Code of Conduct
SHERIFF's Office Section:

> 1. Members, whether on duty or off, shall be governed by the ordinary rules of good conduct and behavior and shall not commit any act or omission tending to bring reproach or discredit upon the Sheriff's Office.

> 13. Members shall not perform any acts or make statements oral or written for publication or otherwise which; a) destructively criticizes the Sheriff's Office or its Administrative Staff in the performance of their duties. b) may disrupt or impair the performance of official duties and obligations as officers of the Sheriff's Office, c) may interfere with or subvert the reasonable supervision or proper discipline of Deputies of the Sheriff's Office.

> 33. Members shall not enter into correspondence with any person concerning their official activities except as provided by Sheriff's Office policy, nor use Sheriff's Office stationary or forms for any purpose other than the transaction of official business.

> 36. Members shall not use their official position or identification for personal financial gain, or obtaining privileges not otherwise available to them except in the performance of duty or to avoid consequences of unlawful acts.

> 38. Members shall not develop close personnel associations with any inmate, practicing criminal, or develop or maintain a close personal association with any person where such association affronts the community standards and norms.

> 43. Members will perform their duties in a complete and competent manner.

Violations of this nature tend to reflect on the whole department for the actions of one deputy. The public holds trust in law enforcement to conduct themselves appropriately and be held to a higher standard. The allegations have a negative impact on the view that the public has for law enforcement officers and the ability to perform their job. The team suffers from the lack of judgement and professionalism.

*As illustrated in the Okanogan County Civil Service Rules, 2017, sections 18.03b, 18.03d, and 18.03h*

A key to our success in public safety is the trust of the public. Despite our personal feelings regarding certain elements of society or their behaviors and actions, ours actions must be beyond reproach in order to gain and maintain that trust. Any perception of inappropriate behavior, lack of integrity (or related) doesn't have to be validated with fact in order for a loss of trust to occur. These things contribute to a decrease in desire for collaboration in our efforts.

**Discipline Recommendations:**

Deputy Holloway has no active discipline in his file and I can find no other recent complaints that are similar in nature. I am recommending a letter of reprimand with 3 days unpaid leave, suspended on condition no future violations similar in nature for 1 (one) year from date of pre-discipline hearing.

I certify (declare) under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Chief Criminal Deputy Laura Wright U3 052920

Per CBA 21.7 A copy of this report will be provided to Deputy Holloway.

21. 7 Investigations shall be concluded within a reasonable period of time. Within a reasonable period after the conclusion of the investigation and no later than three (3) business days prior to a pre-disciplinary hearing, the employee shall be provided a written summary of the allegations, findings of the investigation, any supervisor's recommendation for discipline, and a copy of the entire investigative report.