Stephen T. Graham
steve@grahamdefense.com
Law Office of Steve Graham
1312 North Monroe Street, Suite 140
Spokane, WA 99201
Tel: (509) 252.9167

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON
# AT SPOKANE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>MADDESYN DANIELLE GEORGE,<br><br>*Defendant.* | No. 2:20-CR-153-RMP<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

The defense respectfully requests that the Court sentence Maddesyn George to 5 years in prison, which is the minimum sentence allowed by law for the drug offense to which she pleaded guilty. The crime of manslaughter has no mandatory minimum. We will address the manslaughter charge first and the drug offense second.

1. **Manslaughter**

Maddesyn George pleaded guilty to voluntary manslaughter. The defense is asking the court to sentence her to 5 years in prison. The sentence should be mitigated below the advisory guideline range because this case is distinguishable from nearly all other similar cases. The man Maddesyn George shot had raped her the night prior, and he was confronting her again.

DEFENDANT'S SENTENCING MEMORANDUM                    1

Rape is universally recognized as one of the most horrific crimes. "In addition to being a highly offensive invasion of another's bodily integrity, rape violates our most treasured notions of bodily autonomy." *Kaur v. Wilkinson*, 986 F.3d 1216, 1222–23 (9th Cir. 2021). As Justice Powell explained:

> [Rape] is widely viewed as the most atrocious of intrusions upon the privacy and dignity of the victim; never is the crime committed accidentally; rarely can it be said to be unpremeditated; often the victim suffers serious physical injury; the psychological impact can often be as great as the physical consequences; in a real sense, the threat of both types of injury is always present.

*Furman v. Georgia*, 408 U.S. 238, 458, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Powell, J., dissenting). The Ninth Circuit has also commented on the terrifying psychological consequences of rape:

> [A]rticles have described additional long-term psychological effects of rape, including chronic anxiety, nightmares, catastrophic fantasies, feelings of alienation and isolation, sexual dysfunctions, physical distress, mistrust of others, phobias, depression, hostility, and suicidal thoughts. American Medical Association's Council on Scientific Affairs, "Violence against women: relevance for medical practitioners," *J. Amer. Med. Ass'n.,* June 17, 1992. The effects of rape appear to resemble the effects of torture. A recent article compared the psychological sequelae of rape survivors to the psychological distress endured by survivors of abuse constituting torture under international law, and concluded that "the suffering of rape survivors is strikingly similar in intensity and duration to the suffering endured by torture survivors." Note, "Torture by Means of Rape," 84 *Georgetown L.J.* 1913, 1931 (1996).

*Lopez-Galarza v. I.N.S.,* 99 F.3d 954, 962–63 (9th Cir. 1996). It was under this trauma and psychological distress that Maddesyn George acted when confronted by Kristopher Graber.

**DEFENDANT'S SENTENCING MEMORANDUM**                2

Against this pernicious crime of rape, Indian nations are made powerless to protect their members under the law. The Tribes have no ability to prosecute non-Tribal members for sexual violence. See *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 195, 98 S. Ct. 1011, 1014, 55 L. Ed. 2d 209 (1978). Rather the federal government is responsible in our legal system for protecting members of Indian nations. See generally, *United States v. Sandoval*, 231 U.S. 28, 46, 34 S. Ct. 1, 5, 58 L. Ed. 107 (1913); *United States v. Krause*, 92 F. Supp. 756, 760 (W.D. La. 1950); *Sioux Nation of Indians v. United States*, 601 F.2d 1157, 1177 (Ct. Cl. 1979), aff'd, 448 U.S. 371, 100 S. Ct. 2716, 65 L. Ed. 2d 844 (1980) ("inherent duty to protect"). The federal government often fails to protect indigenous women by declining prosecution on serious offenses. The declination rates are 50 percent on murder and manslaughter, 76 percent on adult sex crimes, including rape. *Examining Federal Declinations to Prosecute Crimes in Indian Country*, 110th Cong. 22 (2008), www.govinfo.gov/content/pkg/CHRG-110shrg46198/html/CHRG-110shrg46198.htm at p. 1. The violence against indigenous women is based on stereotypes and rooted in colonialism according to expert Valaura Imus-Nahsonhoya.

> Why seek Natives? We're associated with fetishes, such as long hair, exotic looks that sex patrons perceive as Asian or Hispanic, Imus-Nahsonhoya says." We could look like anything." Enslaving Native women for sex or other purposes isn't new, either: Imus-Nahsonhoya displayed books and illustrations showing that the practice has been occurring for centuries.
> * * *
> The high rates of poverty and hardship in tribal communities; historical trauma and culture loss; homelessness and runaway youth; high rates of involvement with child welfare systems, including entry into the foster care system; exposure to violence in the home or community; drug and alcohol abuse; and low levels of law enforcement all add up to a community rich in targets for traffickers.

**DEFENDANT'S SENTENCING MEMORANDUM**   3

*Why Traffickers Go After Native American Women,* NAVAJO-HOPI OBSERVER, quoting Valaura Imus-Nahsonhoya from *Hopi Times* interview. Available at www.freedomunited.org/news/why-traffickers-go-after-native-american-women/

Against this backdrop, it is important to look at how the investigation of Maddesyn George's complaint of rape was handled by the authorities. After Maddesyn George explained that she was raped by Kristopher Graber, no further steps were taken to investigate this. It is only by accident that we have a photograph of the handcuffs bolted to the wall by a bed in Mr. Graber's home.



The police inadvertently captured the handcuffs in a long shot of the defendant's house. No explanation was given to the police as to these handcuffs, and no questions about the handcuffs were posed to any witness in the 30,000 pages of discovery in this case. No DNA was taken. No women were asked about prior sexual assaults. The deceased had a room set up in his home to facilitate rape, and the government has tried to pretend like it never existed.[1] No explanation has been given for the government's obstinacy on this. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose

---

[1] Additionally, there was evidence that Mr. Graber's friends had tried to remove evidence from this room. See Exhibit 1

**DEFENDANT'S SENTENCING MEMORANDUM**   4

*obligation to govern impartially…*" *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935) (emphasis added). Is it possible that Maddesyn George is both a flawed individual AND a victim of rape? The government has never made allowance for such a possibility. The defense would contend that both are true. But no amount of drug abuse or thievery from Walmart or juvenile court convictions forfeit a woman's right to bodily autonomy. Not to Kristopher Graber and not to Isaiah Holloway. Such a perspective would disqualify from coming forward a huge swath of women who are actually the most susceptible to being preyed upon in the first place.

We would ask the Court to find what the government has never been willing to admit: that a preponderance of the evidence exists that Maddesyn George was raped by Kristopher Graber the night prior to the shooting. This fact doesn't make the loss to Mr. Graber's family any less real, and the subject of the rape will be hard for the family to hear, but in light of the evidence, it is the only fair conclusion. Maddesyn George made a credible contemporaneous complaint to the police, complained of the sexual assault to Shannon Edwards prior to the shooting, and Maddesyn George's story is corroborated by physical evidence within Mr. Graber's home.

2. **Drug Offense**

Maddesyn George was found in possession of 47 grams of the drug methamphetamine. The circumstances of how she came to be in possession of such a large amount are understood by the court. She did not take possession of the drug in the regular course of commerce. Nor is it alleged that her involvement with such an amount was at all typical. July 12th, 2020 was not a representative snapshot of her day-to-day life. The drugs were possessed for a relatively short period of time.

DEFENDANT'S SENTENCING MEMORANDUM                 5

While the drugs were shared with others, there is no evidence that she attempted or planned to sell the drugs. Maddesyn George's involvement with drugs was ancillary to Kristopher Graber's involvement in drugs.  It is appropriate under the law to consider the role each person played.  See e.g. *United States v. Valdez-Gonzalez*, 957 F.2d 643, 649 (9th Cir. 1992) (upholding a reduced sentence for an individual who was merely a courier).  Enforcement of drug laws in the Omak area has not been uniform.  It is important to note that Kristopher Graber was caught in October 2019 with three times the amount of drugs Maddesyn possessed (and a firearm), and he was not prosecuted federally.  See Exhibit 2 which consist of the probable cause affidavit from his offense in Okanogan County Superior Court.  Admittedly, "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (citing *United States v. Goodwin,* 457 U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982)),

    As to the restitution owed to Mr. Graber's family, the defense does not have any objection.  The defense would respectfully request that the court recommend to the Bureau of Prison a drug treatment program during her incarceration. Additionally, the defense agrees with the government that substantial probation is appropriate to facilitate Maddesyn George's reentry into society.

DATED this 13th day of October, 2021

*s/* Stephen T. Graham
Stephen T. Graham, WSBA #25403
Attorney for the Defendant
Law Office of Steve Graham

**DEFENDANT'S SENTENCING MEMORANDUM**  6

## CERTIFICATE OF SERVICE

I hereby certify that on October 13th, 2021, I electronically filed the Defendant's Sentencing Memorandum with the Clerk of the Court using CM/ECF System which will send notification of such filing to the following: Alison Gregoire, Assistant United States Attorney, and Richard Barker, Assistant United States Attorney.

*s/* Stephen T. Graham
Stephen T. Graham, WSBA #25403
Attorney for the Defendant
Law Office of Steve Graham
1312 North Monroe, #140
Steve@grahamdefense.com
Tel: (509) 252.9167
Fax: (509) 356.1714

**DEFENDANT'S SENTENCING MEMORANDUM**            7