Stephen T. Graham
steve@grahamdefense.com
Law Office of Steve Graham
1312 North Monroe Street, Suite 140
Spokane, WA 99201
Tel: (509) 252.9167

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON
# AT SPOKANE

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

MADDESYN DANIELLE GEORGE,

    *Defendant.*

No. 2:20-CR-153-RMP

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The defendant Maddesyn George, by and through her attorney Stephen Graham, respectfully replies to the government's response to the defendant's sentencing memorandum.

The government contends that the defendant's request for a 5-year sentence means, in effect, that the defendant would receive no punishment for the crime of manslaughter. ECF No. 144 at 1. The government offered the defendant a plea resolution that reduced the shooting to a lower seriousness level then the drug offense. The defendant accepted that offer. A concurrent sentence under such circumstances would not be unusual. Concurrent sentences were common even before the Sentencing Reform Act of 1984. *See e.g. The Federal Concurrent Sentence Doctrine*, 70 Colum. L. Rev. 1099, 1100 (1970). It is not correct that a 5-year total sentence

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

1

would provide no punishment for the manslaughter conviction. If all Maddesyn George did was possess drugs with intent to deliver, she would be requesting a safety-valve sentence. Moreover, if all Maddesyn George did was possess 47 grams, she may have never been charged federally, like when Mr. Graber wasn't charged federally when he possessed three times that amount.

Much of the disagreement between the defense and the government surrounds the sexual assault. The government is contending that Ms. George wasn't sexually assaulted, and thus doesn't qualify for a victim provocation departure. Unfortunately, the government has taken a very biased look at the evidence. The government writes:

> [T]he United States has received a number of letters from Defendant's prior romantic partners, many of whom were in relationships with Graber for years. Each of these women indicated Graber never was sexually inappropriate with them in any way. These partners further explained they could not imagine him being sexually inappropriate – let alone raping – anyone.

ECF No 144, at 5. This seems like an odd rationale for why the court shouldn't believe Maddesyn George's account. Experts on sexual violence take issue with this. "[P]ositive opinions from friends and family do not serve as evidence that an individual is incapable of sexual assault. As advocates we know that even the most kind and charismatic individuals are capable of abuse." *See* Exhibit 1, Letters from Staff Members at YWCA. Similarly, the Washington Coalition of Sexual Assault Programs writes:

> Prosecutors have tried to portray Graber as someone who would never hurt women, and produce as evidence testimony from family, friends, and past partners. However, abusive people who perpetrate sexual and intimate partner violence rarely are people who use violence in all of their relationships. Most perpetrators could produce character witnesses who have never experienced their violence, nor could they conceive of that person

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

2

> using violence. Sexual and domestic violence, though, are targeted against specific individuals who the perpetrator wants to control and harm. Frequently, perpetrators select people who are "vulnerable" and who may not be believed by professionals in criminal legal systems - people who are Native, are under the influence of substances or addicted to substances, are young, and other reasons related to societal oppressions.

*See* Exhibit 2, Page 2.

The government discounts the importance and relevance of the sexual harassment that Maddesyn George received from the police in Okanogan County, and writes: "Deputy Holloway had no role whatsoever in the instant case." ECF No. 144 at 5. This statement fails to appreciate the hurdles that exist for women in reporting sexual violence. While it is true that Detective Holloway had nothing to do with investigating the shooting, he is the officer that would likely have responded if Maddesyn George had reported the rape. There are very few officers within rural Okanogan County. The county is three times the land area of Spokane County, and who responds is largely dependent on who lives in certain areas. Speaking to the barriers to reporting violence, the Sovereign Bodies Institute writes on their survey:

> Of the respondents who reported their experience of violence to law enforcement, approximately half rated their experience as below average or poor, and half also said that their abuser was never arrested or did not receive charges. One in five said that they were arrested and taken to jail along with their abuser, or received threats of being taken to jail from law enforcement. Approximately half of all respondents said they felt uncomfortable or unsafe calling 911 for help, and respondents were more than twice as likely to call a friend and more than four times more likely to call a family member for help. From this perspective, we can see that Maddesyn's fear of reporting is not the exception, it is the norm among Indigenous victims.

*See* Exhibit 3, page 2. The Washington State Coalition Against Domestic Violence echoes that sentiment, explaining "Native women and girls surviving sexual or domestic violence have well-founded reason to believe that their abuse will not be taken seriously by authorities, that it is useless to report assault, and that no one will protect them." *See* Exhibit 4, page 2.

> According to the National Sexual Violence Resource Center, most survivors of sexual violence do not report to police. For Indigenous and Black survivors and other survivors of color, their communities' histories with police violence and mass incarceration become a palpable barrier to seeing law enforcement as a safe harbor or viable channel for accountability. Survivors with records have a well-founded fear that the stigma of criminality will prevent authorities from seeing them as credible victims and witnesses. Additionally, research demonstrates that it is more common than many think for police officers to sexually harass, assault, and coerce people in their custody.

*See* Exhibit 5, page 4, Letter from Scholars of Gender-Based Violence.

The government questions many of Maddesyn George's behaviors around the time of, and after, the sexual assault. "After the alleged assault, which Defendant described as lasting 45 minutes, Defendant said, 'I'm hungry, let's get something to eat," and the two went and made breakfast.'" Listening to the audio of Ms. George's interview with the police, it is clear that Ms. George was just attempting to end the encounter. This is not unusual behavior.

> The prosecutors offer a series of Ms. George's actions that, in their estimation, are not things that legitimate survivors would do. This includes engaging in drug use; sharing a meal with Mr. Graber and waiting until he fell asleep before she escaped his home; and taking his money, drugs, and the gun he brandished and threatened her with during the assault. In fact, none of these actions are inconsistent with what a survivor might do during or after being sexually assaulted. Engaging in de-escalation tactics is a common—and useful— survival strategy, particularly if the survivor and accused have a relationship. Waiting until Mr. Graber fell asleep is consistent with survivors who know

their abusers and wait until they are incapacitated before escaping a dangerous situation.

Exhibit 5, Page 2.

In conclusion, we would ask the court to listen to the audio of Maddesyn George's interview in conjunction with reading the government's characterization of the event. It is surreal that the government, which is entrusted with prosecuting sexual assault cases, would seek to discredit Maddesyn George in the way that they have. We would ask the court to find that the evidence does show by a preponderance that Maddesyn George was sexually assaulted by Mr. Graber, and apply a departure for victim provocation. Lest there be any confusion, Mr. George does accept responsibility for her actions, and will most definitely explain her feelings on that on the day of sentencing. However, her mistakes and crimes do not change the fact that she was sexually assaulted.

DATED this 10th day of November, 2021

*s/* Stephen T. Graham
Stephen T. Graham, WSBA #25403
Attorney for the Defendant
Law Office of Steve Graham

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

5

## CERTIFICATE OF SERVICE

I hereby certify that on November 10th, 2021, I electronically filed the Defendant's Reply to Government's Response to Defendant's Sentencing Memorandum with the Clerk of the Court using CM/ECF System which will send notification of such filing to the following: Alison Gregoire, Assistant United States Attorney, and Richard Barker, Assistant United States Attorney.

*s/* Stephen T. Graham
Stephen T. Graham, WSBA #25403
Attorney for the Defendant
Law Office of Steve Graham
1312 North Monroe, #140
Steve@grahamdefense.com
Tel: (509) 252.9167
Fax: (509) 356.1714
